UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SEAN K. BUFORD, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 4:17-CV-2506 PLC |
| | ) | |
| DORIS FALKENRATH,[1] | ) | |
| | ) | |
| Respondent. | ) | |

MEMORANDUM AND ORDER

Petitioner Sean K. Buford seeks federal habeas corpus relief from a Missouri state court judgment entered after a jury trial. 28 U.S.C. § 2254. [ECF No. 1] Respondent Doris Kalkenrath filed a response to the petition, along with exhibits consisting of copies of the materials from the underlying state court proceedings, and Petitioner filed a reply. [ECF Nos. 15, 26] For the reasons set forth below, the Court denies the petition, as well as Petitioner's request for an evidentiary hearing.[2]

I.  Background

A.  Petitioner's first trial

In 2007, in Cause No. 0722-CR09916, the State charged Petitioner with 16 counts for crimes against four victims, S.S., M.W., H.S., and J.T.  [ECF No. 27-1] The charges included counts of (1) kidnapping, forcible rape, and forcible sodomy of S.S.; (2) forcible rape and forcible

---

[1] The Court substitutes as the Respondent Doris Falkenrath, the Warden of the Jefferson City Correctional Center where Petitioner is presently incarcerated, in lieu of the former warden of the Missouri correctional institution having custody of Petitioner when he filed this habeas proceeding.  See Federal Rule of Civil Procedure 25(d); Rule 2(a) of the Rules Governing Section 2254 cases in the United States District Court.

[2] The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(c). [ECF No. 6]

sodomy of M.W.; (3) forceable rape, forceable sodomy, robbery, and kidnapping of H.S., as well as four counts of armed criminal action associated with the offenses against H.S.; and (4) one count of forcible rape and two counts of forcible sodomy of J.T. [Id.]

On October 26, 2009, the first day of trial, the State entered a memorandum of nolle prosequi on the three counts related to J.T. because the State was unable to secure the appearance of an essential witness. [Id.] The cause proceeded on the remaining 13 counts. At the conclusion of the trial, the jury returned not guilty verdicts on six counts, including kidnapping of S.S., and the single count of robbery and the four counts of armed criminal action related to the alleged offenses against H.S. [Id.] The jury was unable to return verdicts on seven counts, including forcible rape and forcible sodomy of S.S., forcible rape and forcible sodomy of M.W., and forcible rape, forcible sodomy, and kidnapping of H.S. [Id.]

### B.  Pretrial motions in Petitioner's second trial

The trial court declared a mistrial on the "hung" counts and the case was placed on the January 4, 2010 trial docket. [Id.] The court subsequently continued the trial at the State's request because the prosecutor assigned to the case was handling another trial. [Id.] On January 8, 2010, Petitioner filed a request for speedy "retrial" on the "hung" counts. [Id.] In February 2010, the court continued the trial until April 5, 2010, due to the unavailability of a State witness and Petitioner's refusal to stipulate to the witness's testimony. [ECF Nos. 15-1, 27-1].

On March 23, 2010, the State filed a new indictment, Cause No. 1022-CR01505, charging Petitioner with ten counts: the remaining seven counts from Cause No. 0722-CR09916, as well as three counts related to J.T. which the State entered a nolle prosequi prior to the October 26, 2009 trial. [ECF No. 15-5]. The new indictment charged Petitioner with (1) forcible rape and forcible sodomy of S.S. (Counts I and II); (2) forcible rape and two counts of forcible sodomy of J.T.

(Counts III-V); (3) forcible rape and forcible sodomy of M.W. (Counts VI and VII); and (4) forcible rape, forcible sodomy, and kidnapping of H.S. (Counts VIII-X).  [Id.]

On April 5, 2010, the court cancelled the trial and set a motion hearing to consider dismissal of the indictments. [ECF Nos. 15-5, 27-1] The court reset the hearing several times. [Id.]

On April 19, 2010, Petitioner filed a motion to dismiss the indictments in both cases, Cause Nos. 0722-CR09916 and 1022-CR01505, for failure to timely retry the case after a hung jury. [Id.] On April 22, 2010, the trial court conducted a hearing on Petitioner's motion to dismiss. [ECF Nos. 15-5] At that time, the State entered a memorandum of nolle prosequi in Cause No. 0722-CR09916, and the court arraigned Petitioner on the new indictment, Cause No. 1022-CR01505. [ECF Nos. 15-5, 27-1] The court also denied Petitioner's April 19, 2010 motion to dismiss and set the case for trial on July 19, 2010.  [ECF Nos. 15-5]

On July 13, 2010, Petitioner filed several pretrial motions, including: (1) a motion to dismiss the five charges related to S.S. and H.S. claiming a violation of his right to be free from double jeopardy after his acquittal on related charges in his first trial; (2) a motion to sever asserting joinder of the offenses in a single trial was improper and, even if joinder was proper, severance was warranted because joinder would result in substantial prejudice to Petitioner; and (3) a motion to dismiss for failure to timely retry the case after the hung jury, asserting a violation of his Missouri constitutional and statutory speedy trial rights, as well as his United States constitutional due process and speedy trial rights. [Id.] On July 19, 2010, the case proceeded to trial. Prior to the admission of evidence, the court conducted a hearing on Petitioner's outstanding motions and denied the motions.[3] [ECF No. 15-1]

---

[3] Petitioner also filed a handwritten motion to dismiss for a violation of his speedy trial rights on the first day of trial. This motion was substantially similar to his pending motion and was also denied by the court that day. [ECF No. 15-1]

3

### C.  Petitioner's second trial

At trial, M.W. testified that on the morning of February 20, 2007, it was cold outside and she was walking to a friend's house. [Id.] Near the intersection of Page and Goodfellow, she asked a man in a gold Saturn, later identified as Petitioner, if she could pay him to give her a ride. [Id.] Petitioner agreed and M.W. got into the car. [Id.] Instead of taking M.W. to her friend's house, Petitioner drove to an alley and parked. [Id.] Petitioner called M.W. "the B word" and demanded she perform oral sex on him. M.W. testified Petitioner grabbed her by the back of the head, pushed her head toward his genital area, and forced his penis into her mouth. [Id.] Then, Petitioner reclined M.W.'s seatback and laid her on her stomach so that she was facing the car's back windshield. [Id.] Petitioner pulled her pants down and had sexual intercourse with her. [Id.] Afterward, while Petitioner was rummaging through M.W.'s purse, M.W. ran from the vehicle and called the police from a pay phone.  [Id.]

In the early morning hours of March 14, 2007, H.S. was walking down the street on her way to a client's home. [ECF No. 15-2]. H.S. testified she used heroin and cocaine, and she worked as a prostitute with a certain group of clients with whom she felt comfortable. [Id.] As she was walking down Hamilton, near Minerva, Petitioner pulled over in a gold Saturn and asked if she was looking for a date. [Id.] H.S. told him no, and Petitioner drove away. [Id.] H.S. testified Petitioner returned shortly thereafter and forced her into the car. [Id.] Petitioner drove to a nearby lot and parked. [Id.] Petitioner called H.S. a bitch and ordered her to perform oral sex on him. [Id.] Petitioner then grabbed H.S.'s head and pushed it down. [Id.] H.S. testified she was afraid so she performed oral sex on him. [Id.] Petitioner then reclined H.S.'s seatback, climbed on top of her, and had sexual intercourse with her. [Id.] At some point, Petitioner directed H.S. to turn over so that she was on her stomach, facing the back window. [Id.] Petitioner pushed H.S.'s head into the

backseat, put his penis into her vagina, and stuck his fingers into her anus. [Id.] When he was finished, Petitioner told H.S. to get out of the car, and H.S. ran to a nearby house and called the police. [Id.]

J.T. testified that in June 2007 she was a drug addict who worked as a prostitute. [Id.] In the early morning hours on June 8, 2007, J.T. stopped at a store for some food while on her way to a nearby motel where she planned to relax and get high. [Id.] Outside the store, near the intersection of Hodiamont and Ridge, J.T. was stopped by Petitioner who was driving a gold, four-door car. [Id.] J.T. had seen Petitioner driving around the neighborhood on several other occasions but he had never propositioned her before. [Id.] J.T. got into the car, and they came to an agreement about J.T. performing oral sex. [Id.] J.T. testified she had a "comfort zone" and preferred to work within the few-block radius of where she picked up her customers. [Id.] As Petitioner was driving, she directed him to make a turn and told him that she did not want to cross Page Avenue. [Id.] After Petitioner ignored her directives and continued to drive, J.T. decided she was not going to go through with the date. [Id.] After Petitioner parked at the end of a dead-end street, J.T. reached for the door handle to exit the vehicle and she realized the handle was missing.  [Id.] Petitioner grabbed J.T.'s wrist and ordered her to perform oral sex on him. [Id.] As she complied, Petitioner held her head down. [Id.] Petitioner then reclined J.T.'s seatback, climbed over the console, and had vaginal intercourse with her. [Id.] Petitioner then turned J.T. over onto her stomach, positioned her waist between the front seats and her upper body in the backseat, and put his penis into her anus. [Id.] Petitioner then forced J.T. to perform oral sex on him before again forcing her to submit to anal sex. [Id.] During the assault, J.T. and Petitioner were startled when someone, later identified as Charles Burton, approached the vehicle and knocked on the driver's-side window. [Id.] J.T. then elbowed Petitioner, pushed him off her, and rushed out of the driver's-side door screaming, "He's

raping me, he's raping me." [Id.] J.T. testified she had blood and feces in her mouth and all over her body. [Id.]

Charles Burton testified he saw a gold car parked approximately 100 yards away from his home and decided to check it out because the area was known for drug dealing and prostitution. [Id.] Burton stated J.T. was hysterical upon exiting the vehicle and was anxious for him to call the police. [Id.] J.T. was crying, shaking, and saying that Petitioner raped her. [Id.] Burton noticed there was blood and feces on J.T. and on the interior of the vehicle. [Id.] J.T. was naked from the waist down so Burton gave J.T. a blanket to cover up with while waiting for the police. [Id.]

Officer Andre Jackson was dispatched to the scene. [Id.] Officer Jackson described J.T. as distraught, indicating she was crying and rocking back-and-forth while in the fetal position. [Id.] While speaking with her, the officer noticed a strong odor of feces emitting from her mouth. Burton provided Officer Jackson with a description of the vehicle and its license plate number. [Id.]

Kathryn Howard, a registered nurse at St. Mary's Health Center, testified she completed the sexual assault kit for J.T. [Id.] Howard stated J.T. had stool all over her face and in her mouth when she arrived at the hospital. [Id.] J.T. was also suffering from large internal hemorrhoids which had come out of J.T.'s rectum, and which were bleeding and causing her a significant amount of pain. [Id.] After the sexual assault examination was complete, a doctor performed a procedure to place J.T.'s hemorrhoids back inside of her rectum. [Id.]

On July 1, 2007, S.S. and her boyfriend were walking to a family member's house when they noticed a gold vehicle drive by several times. [Id.] S.S.'s boyfriend went into a nearby convenience store, while S.S. continued walking by herself. [Id.] Near the corner of Hodiamont and Martin Luther King Boulevard, S.S. saw Petitioner exit the gold vehicle. [Id.] Petitioner called out to S.S. using the wrong name, and S.S. told Petitioner that he had the wrong person. S.S.

testified that she "ended up in the car" with Petitioner.[4] [Id.] Petitioner drove S.S. to an alley near Minerva and parked behind a house. [Id.] Petitioner reclined S.S.'s seatback and locked the passenger-side door. [Id.] Petitioner told S.S. that he wanted her to act out a "script" where she was to pretend that she was his younger sister and he was going to creep into her room to have sex with her. [Id.] Petitioner then grabbed the back of S.S.'s head and forced her to perform oral sex on him. [Id.] S.S. testified that Petitioner was unable to maintain an erection, which Petitioner blamed on S.S. not being able to remember the script. [Id.] Petitioner then moved S.S. onto her stomach, climbed on top of her, and began rubbing his penis on her lower back. [Id.] Petitioner put his penis into her vagina but again was unable to maintain an erection. [Id.] S.S. then saw someone exit the house nearby so she began yelling. [Id.] Petitioner drove a short distance away and ordered S.S. to get out of the car. [Id.] As he pulled away, S.S. memorized his license plate number[5] and then ran for help. [Id.]

In July 2007, police followed up on the license plate number provided by S.S. and learned that the vehicle was linked to the assault on J.T. [Id.] When police responded to the registration address, Petitioner was present at the home. [Id.] Each of the victims identified Petitioner as their assailant and Burton identified Petitioner as the driver of the gold vehicle. [Id.] After the incidents, each of the women underwent a sexual assault examination at the hospital and a sexual assault evidence kit was completed. Petitioner's DNA, or DNA consistent with Petitioner's DNA, was recovered from each of the victims.  [Id.] After the State rested its case, Petitioner filed a motion for judgment of acquittal and renewed his motions to dismiss on double jeopardy and speedy trial grounds. [Id.] The court denied the motions. [Id.]

---

[4] The circumstances surrounding how S.S. came to be in Petitioner's vehicle were intentionally left vague at Petitioner's second trial because the jury in his first trial acquitted Petitioner on the count alleging he kidnapped S.S.
[5] The license plate number provided by S.S. matched that provided to police by Charles Burton after the assault on J.T.

The defense presented three witnesses, each relating to the charges involving J.T. [Id.] One witness testified that the convenience store where J.T. stated she bought food before the assault was closed at that time. [Id.] The other two witnesses testified that the alley behind their houses was known for prostitution and that they saw a car parked in the alley on July 1, 2007, but they did not hear any screaming coming from the vehicle. [Id.]

Outside of the presence of the jury, the court inquired of defense counsel whether she had spoken with Petitioner regarding his right to testify. [Id.] Counsel informed the court she had advised Petitioner about his right to testify and that the decision as to whether or not he would testify was his. [Id.] Counsel told the court that after "long discussions" about the issue, Petitioner had decided not to testify. [Id.] Counsel also presented the court with a written waiver, signed by Petitioner, indicating he had been advised of his rights and was electing not to testify at trial. [ECF Nos. 15-2, 15-5]

At the conclusion of the evidence, the jury found Petitioner guilty of Counts I through V, constituting the two charges of forcible rape and the three charges of forcible sodomy relating to S.S. and J.T. The jury found Petitioner not guilty of the charges related to M.W. and H.S., Counts VI through X. [ECF No. 15-5] Petitioner filed a motion for judgment of acquittal or for a new trial, which the trial court denied. [Id.]

### D.  Sentencing

Prior to his sentencing, Petitioner wrote a letter to the court advising it that he wished to discharge his attorney and represent himself at sentencing. [ECF No. 28-1]. At the sentencing hearing, the court inquired about the letter, and Petitioner indicated that he was dissatisfied with counsel's representation and reiterated that he wanted to represent himself at sentencing. [Id.] The trial court asked Petitioner if he had any training as a lawyer, to which Petitioner replied that he

did not. [Id.] Petitioner also indicated he had previously "been through" a bench trial but that this was his first experience with a jury trial. [Id.]

Upon questioning by the court, counsel stated she believed sentencing was an important part of the case and she did not think Petitioner was competent to represent himself. [Id.] Counsel then raised concerns about Petitioner's mental health stating:

> I appreciate his distress. He's in a very difficult situation. He's been confined for over three years, for a substantial part of it, at least these last couple of months, in solitary. He's had no contact.
> His mother has brought to me her concerns that he's been in a deep depression since the verdict has come in and that the letters she has received indicate that he's not thinking straight. I'm aware that he has a prior diagnosis of bipolar disorder, which would be consistent with the behavior that we're seeing right now. [Id.]

Counsel requested that the court deny Petitioner's request to remove her to ensure Petitioner maintained competent representation but allow Petitioner to express his concerns directly to the court during the proceeding. [Id.]

The court denied Petitioner's request to represent himself at his sentencing. [Id.] In doing so, the court acknowledged Petitioner's dissatisfaction with counsel's representation but noted that counsel represented Petitioner throughout the trial, was knowledgeable about the relevant issues, raised a substantial number of legal issues on his behalf, and had been a strong advocate for him. [Id.] The court also found that "sentencing includes a number of legal matters that a competent lawyer has been trained to deal with" and that Petitioner "deserve[d] the benefit of a competent lawyer for the sentencing process." [Id.] During the sentencing hearing, the court sought Petitioner's input on several occasions and spoke with Petitioner at length about the information contained in the sentencing assessment report. [Id.] The court sentenced Petitioner to two concurrent life sentences on Counts I and II, to run consecutively with three concurrent life sentences on Counts III, IV, and V. [ECF Nos. 15-5, 28-1].

### E.  Direct appeal

Petitioner appealed his convictions to the Missouri Court of Appeals for the Eastern District, raising four issues. [ECF No. 15-3] First, Petitioner argued the trial court violated his Missouri constitutional and statutory speedy trial rights and his Sixth Amendment speedy trial right by denying Petitioner's motion to dismiss the charges for failing to timely retry the case after his first trial ended in a hung jury. [Id.] Next, Petitioner argued that the trial court plainly erred and violated Petitioner's rights to due process and self-representation under the Fifth, Sixth, and Fourteenth Amendments by denying his voluntary and intelligent waiver of counsel at sentencing. [Id.] Petitioner also argued that the trial court erred in denying his motion to dismiss certain counts on double jeopardy grounds based on Petitioner's acquittal of related charges during his first trial, and that the trial court abused its discretion in denying Petitioner's motion for mistrial after a State witness testified in violation of the court's limiting order. [Id.] The Missouri Court of Appeals affirmed the conviction in an unpublished per curiam order accompanied by a memorandum sent to the parties setting forth the reasons for the order. State v. Buford, No. ED 95825, 370 S.E. 3d 887 (Mo. App. 2012). [ECF No. 15-6].

### F.  Post-conviction proceedings

#### 1.  Rule 29.15 proceeding

Petitioner filed a premature *pro se* post-conviction motion under Missouri Supreme Court Rule 29.15, that was subsequently amended by appointed counsel. [ECF No. 15-7] In his first claim, Petitioner asserted his trial and appellate attorneys were ineffective for failing to challenge Petitioner's retrial and conviction on Counts I and II, regarding S.S., on double jeopardy grounds pursuant to section 56.087 of the Missouri Revised Statutes,[6] which provides that a dismissal of

---

[6] Section 56.087 RSMo provides in pertinent part:

…

10

charges after double jeopardy has attached is with prejudice unless the defendant consents to dismissal without prejudice. [Id.] Petitioner asserted that double jeopardy attached on Counts I and II after the jury has been impaneled and sworn during his first trial, and the State's subsequent dismissal of and reindictment of the charges on which the jury was hung violated Petitioner's right to be free from double jeopardy. [Id.] In his second and third claims, Petitioner asserted his appellate counsel was ineffective for failing to assert on direct appeal a claim that the trial court erred in overruling Petitioner's motion to sever offenses and that his trial counsel was ineffective for advising Petitioner not to testify in his own defense at trial. [Id.]  The State conceded the merits of Petitioner's first claim, and the parties agreed that an evidentiary hearing was necessary only as to Petitioner's third claim, regarding the circumstances surrounding Petitioner's decision not to testify in his own defense. [ECF 15-7, 27-2]

Petitioner and his second trial attorney testified at the post-conviction evidentiary hearing. [ECF 27-2] Counsel testified that Petitioner's defense at trial was that the victims were prostitutes, the sexual encounters were consensual, and the assault allegations were the result of Petitioner's refusal to pay the women after the encounters. [Id.] Counsel did not believe Petitioner's testimony was necessary to his defense because other evidence suggested that the victims were prostitutes and the circumstances surrounding the encounters supported Petitioner's defense. [Id.]  Counsel testified she read Petitioner's testimony from his first trial and believed Petitioner sounded "like he was being arrogant." [Id.] Counsel also consulted with Petitioner's first trial counsel to get her

---

2. A dismissal filed by the prosecuting or circuit attorney prior to the time double jeopardy has attached is without prejudice. A dismissal filed by the prosecuting or circuit attorney after double jeopardy has attached is with prejudice, unless the criminal defendant has consented to having the case dismissed without prejudice.

3. A dismissal without prejudice means that the prosecutor or circuit attorney has complete discretion to refile the case, as long as it is refiled within the time specified by the applicable statute of limitations. A dismissal with prejudice means that the prosecutor or circuit attorney cannot refile the case.

4. For the purposes of this section, double jeopardy attaches in a jury trial when the jury has been impaneled and sworn. It attaches in a court-tried case when the court begins to hear evidence.

opinion of whether Petitioner's testimony was helpful to his defense during the first trial. [Id.] After reviewing the transcript and consulting with Petitioner's prior counsel, counsel informed Petitioner that she did not think his prior trial testimony was either effective or helpful to his defense, and it was not essential for him to testify to fulfill their trial strategy. [Id.] Counsel advised Petitioner that he had a right to testify and it was ultimately his decision whether to testify, but that she did not believe he should testify. [Id.] Counsel stated Petitioner oscillated on whether he should testify, and that they discussed the issue on several occasions before he decided against testifying. [Id.]

Petitioner testified that he and counsel discussed whether he should testify in his own defense at his second trial. [Id.] Petitioner disagreed with counsel's assessment of his testimony during his first trial, believing that his testimony sounded sincere. [Id.] Petitioner stated he believed his testimony was necessary to convey his innocence to the jury but that he followed counsel's recommendation. [Id.] Petitioner acknowledged that both counsel and the trial court advised him that it was his decision whether he would testify. [Id.]

The motion court granted Petitioner's motion as to his first claim, finding he was entitled to dismissal of the charges in Counts I and II, pursuant to section 56.087 RSMo, because double jeopardy attached after the first jury panel was impaneled and sworn. [Id.] Accordingly, the court vacated Petitioner's convictions on Counts I and II. [Id.] The motion court denied Petitioner's second and third claims, finding Petitioner had failed to demonstrate that he was entitled to relief. [Id.]

On his second claim, the court found Petitioner's appellate counsel did not provide deficient representation by electing not to challenge the trial court's denial of Petitioner's motion to sever the offenses or, in the alternative, motion to dismiss for improper joinder. [Id.] The motion

12

determined that joinder of offenses was proper because the crimes were of the same or similar character, the crimes occurred relatively close in time, and a similar vehicle was used in each crime. [Id.] The court also concluded severance was not warranted because the evidence relating to each offense was distinct and uncomplicated, and the jury's acquittal on five of the ten counts demonstrated the jury's ability to distinguish among the charges. [Id.]

On his final claim, the motion court concluded Petitioner's trial counsel did not provide deficient representation by advising Petitioner not to testify at trial. [Id.] The court determined the credible testimony at the evidentiary hearing demonstrated that counsel's advice to Petitioner not to testify was carefully considered by counsel after she reviewed the prior testimony and consulted with Petitioner's prior attorney. [Id.]  The court found counsel was not ineffective for advising Petitioner not to testify because counsel believed he would make a bad witness and counsel's reasons for advising Petitioner not to testify were part of a reasonable trial strategy. [Id.]

### 2.   Appeal

Petitioner presented two points in his post-conviction appeal, challenging as violations of his Fifth, Sixth, and Fourteenth Amendment rights to due process and the effective assistance of counsel his trial attorney's advice not to testify in his own defense at trial and his appellate attorney's failure to assert on direct appeal that the trial court erred in denying Petitioner's motion to sever offenses, or in the alternative, motion to dismiss for improper joinder. [ECF 15-8] The Missouri Court of Appeals affirmed the motion court's judgment in an unpublished per curiam order accompanied by a memorandum sent to the parties only setting forth the reasons for the order. Buford v. State, No. ED 103168, 497 S.W.3d 872 (Mo. App. 2016). [ECF No. 15-10]

### II.    Petitioner's Grounds for Federal Habeas Relief

In the habeas petition, Petitioner asserts the following five grounds for relief:

(1) The trial court erred in denying Petitioner's motion to dismiss the charges for the failure to timely retry the case after a hung jury;

(2) The trial court erred in denying Petitioner's request to represent himself at sentencing;

(3) Trial counsel provided ineffective assistance by improperly advising Petitioner not to testify in his own defense;

(4) Appellate counsel provided ineffective assistance by failing to appeal the trial court's decision denying Petitioner's motion to sever offenses, or in the alternative, motion to dismiss for improper joinder;

(5) Trial counsel provided ineffective assistance by failing to seek the dismissal of all seven of the recharged counts involving S.S., M.W., and H.S. as violative of Petitioner's right to be free from double jeopardy. [ECF No. 1]

Respondent counters that the Missouri Court of Appeals considered Petitioner's first four grounds on their merits, and that those grounds should be denied because the Court of Appeals' decisions on those issues are not contrary to, or an unreasonable application of, clearly established federal law, and are not based on an unreasonable determination of the facts. [ECF No. 15] Respondent contends that Ground Five is procedurally barred and, alternatively, that the claim lacks merit. [ECF No. 15]

## III. Discussion

### A. Claims addressed on the merits

#### 1. Standard for habeas review

A prisoner in custody under the judgment and sentence of a state court may only seek habeas relief on the ground that his custody violates the United States Constitution, laws, or treaties. 28 U.S.C. §2254(a); see also 28 U.S.C. §§ 2241(c)(3), 2241(d). When considering a state prisoner's habeas petition, a federal court is bound by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), see 28 U.S.C. § 2254(d), to exercise "only a limited and deferential review of underlying state court decision." Nash v. Russell, 807 F.3d 892, 897 (8th Cir. 2015)

14

(internal quotation marks omitted) (quoting <u>Worthington v. Roper</u>, 631 F.3d 487, 495 (8th Cir. 2011)). A federal court may not grant habeas relief to a state prisoner unless a state court's adjudication on the merits of a claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d).

A state court decision is contrary to clearly established federal law if it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if [it] decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000). A state court decision constitutes an unreasonable application of clearly established federal law if it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u> at 413. The test of reasonableness is an objective one. <u>Id.</u> at 409-10. When reviewing a matter under Section 2254(d)(1), a federal habeas court "is limited to the record that was before the state court that adjudicated the claim on the merits." <u>Cullen v. Pinholster</u>, 563 U.S. 170, 181-82 (2011).

Under section 2254(d)(2), a petitioner may obtain relief if the state court's rejection of his claim was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A federal habeas court must "accord the state trial court substantial deference" and will not supersede the state court's factual determination if "reasonable minds reviewing the record might disagree about the finding in question." <u>Brumfield v. Cain</u>, 576 U.S. 305, 314 (2015) (internal quotation marks omitted) (quoting <u>Wood v. Allen</u>, 558

15

U.S. 290, 301 (2010)). A state court's factual determination is not unreasonable "merely because [a] federal habeas court would have reached a different conclusion in the first instance." Wood, 558 U.S. at 301.

A state court's factual determination is presumed correct unless the petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. §2254(e)(1). The presumption of correctness applies to the state court's factual determinations at either the trial or appellate levels, Smulls v. Roper, 535 F.3d 853, 864-65 (8th Cir. 2008) (en banc), and to a state court's implicit findings of fact, Grass v. Reitz, 749 F.3d 738, 743 (8th Cir. 2014).  Federal habeas courts defer to a state court's credibility determinations and grant habeas relief only if those determinations were objectively unreasonable based on the record. Smulls, 535 F.3d at 864.

### 2.  Ground one: Trial court error – Motion to dismiss

In his first ground, Petitioner claims the trial court erred in denying his motion to dismiss the charges against him because the State failed to timely retry the charges after a hung jury. [ECF No. 1] Petitioner asserts that the delay of 8 months and 20 days between the conclusion of his first trial in October 2009, and the beginning of his second trial in July 2010, constituted a violation of his right to a speedy trial as guaranteed by the Sixth and Fourteenth Amendments. [Id.] Petitioner contends the decision of the Missouri Court of Appeals rejecting the merits of his claim constituted an unreasonable application of United States Supreme Court precedent, as well as an unreasonable determination of the facts in the record. [Id.]

Petitioner filed three pre-trial motions seeking dismissal of the charges against him based on a violation of his speedy trial rights, each of which the trial court denied. [ECF Nos. 15-5, 15-2] On direct appeal, Petitioner challenged the trial court's denial of the motions, asserting a violation of his Sixth Amendment right to a speedy trial. [ECF No. 15-3] In support, Petitioner asserted that he filed a request for a speedy trial; requested no continuances; and that he suffered

prejudice from the delay in the form of extended incarceration, the stigma of unresolved accusations, and continued anxiety over the possibility of wrongful conviction. [Id.]

To assess whether a defendant's right to a speedy trial has been violated, the court balances four factors: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. Barker v. Wingo, 407 U.S. 514, 530-33 (1972). With respect to the length of the delay, unless the delay is presumptively prejudicial the court need not proceed with its analysis. Barker, 407 U.S. at 530; Doggett v. United States, 505 U.S. 647, 652 (1992).

In reviewing Petitioner's speedy trial claim, the Missouri Court of Appeals set forth the four-factor Barker test and observed that a delay of eight months or more is presumptively prejudicial in Missouri. [ECF No. 15-6]. Therefore, because Petitioner experienced a delay of 8 months and 20 days, the Court of Appeals applied the Barker factors.

Following an examination of the Barker factors, the Court of Appeals concluded as follows:

> In this case, the first continuance, from January to February, was because the prosecutor had a conflict with another trial. The second continuance, from February to April, was because the State sought transcripts from the first trial that were not yet completed and from the unavailability of one of the State's witnesses. With respect to the witness, the State asked [Petitioner] to stipulate, but the [Petitioner] refused. Finally, the last continuance, from April to July, was the result of [Petitioner] arguing his motion to dismiss before the court in April. Thus, the State had valid reasons for its continuances and at least one of the delays was fully attributable to [Petitioner]. We also note [Petitioner] filed his request for a speedy trial on January 8, 2010. [Id.]

The Court of Appeals also determined that Petitioner did not suffer any prejudice from the delay of his retrial. [Id.] In assessing this factor, the Court noted Petitioner failed to present any evidence that he was prejudiced by the delay and instead made only conclusory allegations that he suffered from extended incarceration, the stigma of unresolved accusations, and continued anxiety

17

over the possibility of a wrongful conviction. [Id.] After weighing the relevant factors, the Court held the trial court did not err in denying Petitioner's motion to dismiss the charges for failing to timely retry the case. [Id.]

In this proceeding, Petitioner contends the Court of Appeals' finding that he did not suffer any prejudice was unreasonable, in that "[t]here is no doubt" that the State would have been unable to secure J.T. as a witness at the second trial had the trial not been delayed. [Id.] Petitioner, however, has provided no support for this claim. While J.T. may have been unavailable for trial in October 2009, Petitioner's suggestion that J.T. was unavailable for trial at all times prior to the July 2010 retrial is nothing more than unsupported speculation.

Petitioner also asserts that the Court of Appeals unreasonably determined the facts when it attributed to Petitioner the delay that resulted from him pursuing his right to a speedy trial, contending such a finding penalizes Petitioner for asserting his constitutional right.[7] [ECF Nos. 1, 26] Delays caused by the defense, however, weigh against the defendant. Vermont v. Brillon, 556 U.S. 81, 90 (2009). Consequently, any delay caused by Petitioner in prosecuting his motion is properly attributable to him. Based on the foregoing, the Court finds that the state court's decision was not based on an unreasonable application of clearly established federal law as determined by

---

[7] In his reply, Petitioner asserts the Missouri Court of Appeals "counted time against petitioner for pursuing his right to speedy trial in the higher state courts as one of the reasons for the [delay]." [ECF No. 26] After a thorough review of the Court of Appeals' memorandum, this Court was unable to locate any support for Petitioner's assertion that the Court of Appeals made such a finding. Instead, the Court of Appeals attributed the final continuance, from April 2010 to July 2010, to Petitioner because it "was the result of [Petitioner] arguing his motion to dismiss before the court in April." [ECF No. 15-6] In that sentence, "the court" clearly refers to the trial court and not to the Missouri Supreme Court. At the hearing on the motion to dismiss, it was revealed that Petitioner had previously sought, and was denied, a "writ" from the Missouri Supreme Court regarding Petitioner's rights to a speedy trial and to be free from double jeopardy under the Missouri Constitution. [ECF No. 15-1] The record does not establish that Petitioner's petition for a writ from the Missouri Supreme Court delayed his second trial. [Id.] Instead, the record demonstrates the trial court continued the April 2010 setting to conduct a hearing on Petitioner's "motion to dismiss," the first of which was filed on April 19, 2010. [ECF Nos. 15-5, 27-1] For purposes of addressing the merits of the §2254 petition, we will treat Petitioner's allegation as a claim that a court errs if it attributes delay resulting from a defendant's prosecution of a motion to dismiss asserting a violation of his speedy trial rights to the defendant.

the United States Supreme Court. Furthermore, Petitioner has not shown that the state court's determination resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. Petitioner's Ground One is denied.

### 3.  Ground Two: Trial court error – Denial of Petitioner's right to self-representation

In Ground Two, Petitioner argues the trial court erred in denying his request to represent himself at sentencing because his waiver of counsel was voluntary, and intelligently and knowingly made. [ECF No. 1] Respondent contends the trial court did not abuse its discretion in denying Petitioner's request, and that the Missouri Court of Appeals' decision affirming the trial court constituted a reasonable application of federal law.

Prior to sentencing, Petitioner wrote a letter to the trial court informing the court that he wished to discharge his attorney and represent himself at sentencing. [ECF No. 28-1]. At the sentencing hearing, the court inquired about the letter, and Petitioner stated that he was dissatisfied with counsel's representation and reiterated that he wanted to represent himself. [Id.] The trial court denied Petitioner's request. [Id.]

Trial counsel did not raise the self-representation issue in a post-trial motion, thus failing to preserve the issue for appeal. On direct appeal, Petitioner argued the trial court violated his Sixth Amendment right to self-representation, asserting the court plainly erred in denying his timely, clear, and unequivocal request to represent himself at sentencing. [ECF No. 15-3] More specifically, Petitioner maintained the trial court erred in justifying the denial based on Petitioner's lack of technical legal knowledge rather than on a determination of whether Petitioner could knowingly and competently waive his right to counsel. [Id.] The Missouri Court of Appeals held that trial court did not plainly err in denying Petitioner's request to represent himself at sentencing, finding Petitioner's request was untimely and Petitioner failed to demonstrate prejudice from the

19

alleged error. [ECF No. 15-6] In his habeas petition, Petitioner asserts the Missouri Court of Appeals' decision affirming the trial court's denial based on its finding that Petitioner's request was untimely and Petitioner had made no showing of prejudice, was an unreasonable application of United States Supreme Court precedent and an unreasonable determination of the facts based on the record.[8] [ECF No.1]

"[A] criminal defendant has the right to waive his right to counsel at trial and to represent himself as long as the waiver is both voluntary, and intelligently and knowingly made." Meyer v. Sargent, 854 F.2d 1110, 1114 (8th Cir. 1988) (citing Edwards v. Arizona, 451 U.S. 477, 482 (1981) and Faretta v. California, 422 U.S. 806, 835 (1975)). The right to self-representation, however, is not absolute, Martinez v. Ct. of Appeal of California, Fourth App. Dist., 528 U.S. 152, 161 (2000), and is unqualified only if demanded before trial. United States v. Wesley, 798 F.2d 1155, 1155 (8th Cir. 1986). Once trial commences, a defendant's right to discharge his attorney and proceed *pro se* is "sharply curtailed[,]" United States v. Brown, 744 F.2d 905, 908 (2d Cir. 1984) (citations omitted), and becomes subject to the trial court's discretion. Wesley, 798 F.2d at 1155–56. "There must be a showing that the prejudice to the legitimate interests of the defendant overbalances the potential disruption of proceedings already in progress, with considerable weight being given to

---

[8] Petitioner failed to preserve this claim for state appellate review by including it in a timely post-trial motion. As such, the Missouri Court of Appeals reviewed this claim for plain error only. Claims reviewed for plain error by a state appellate court are procedurally defaulted and unreviewable in a federal habeas proceeding, absent cause and prejudice. Clark v. Bertsch, 780 F.3d 873, 876 (8th Cir. 2015) (quoting Hayes v. Lockhart, 766 F.2d 1247, 1253 (8th Cir. 1985) (holding state court's plain-error review does not excuse procedural default). A respondent, however, may waive the defense of procedural default by failing to raise the issue in its response to a federal habeas petition. Trest v. Cain, 522 U.S. 87, 88-90 (1997) (procedural default is not a jurisdictional matter but is a defense which the state is obligated to raise and preserve, thus a court is not required to raise *sua sponte* the petitioner's procedural default of a claim); see King v. Kemna, 266 F.3d 816, 821-22 (8th Cir. 2001) (holding a federal court has the discretion to consider an issue of procedural default *sua sponte*); Goodwin v. United States, 869 F.3d 636, 638 (8th Cir. 2017) (the government's failure to assert procedural default generally waives the defense). Here, Respondent failed to assert that Petitioner's Claim Two was procedurally barred, resulting in its waiver of the defense. Accordingly, this Court addressed the merits of Petitioner's claim.

20

the trial judge's assessment of this balance." <u>Brown</u>, 744 F.2d at 908 (quoting <u>United States ex rel.</u>

<u>Maldonado v. Denno</u>, 348 F.2d 12, 15 (2d Cir.1965)).

In examining Petitioner's claim, the Missouri Court of Appeals explained:

> However, we note [Petitioner's] invocation of his right to self-representation was untimely in this case. [Petitioner] did not request to represent himself until before the sentencing hearing. Once the trial had begun with [Petitioner] represented by counsel, his right thereafter to discharged his lawyer and to represent himself is sharply curtailed. <u>United States v. Brown</u>, 744 F.2d 905, 908 (2d Cir. 1984); see also <u>Wood v Quarterman</u>, 491 F.3d 196, 197 (5th Cir. 2007) (where the court found the trial court had discretion to deny the defendant's motion when the defendant made an untimely request to represent himself after the jury returned a guilty verdict against him right before the sentencing phase of the trial).  There must be a showing that the prejudice to the legitimate interest of the defendant overbalances the potential disruption of proceedings already in progress, with considerable weight being given to the trial judge's assessment of this balance. <u>Id.</u>
>
> In this case, the trial court had discretion to deny [Petitioner's] request because it was untimely. The record shows [Petitioner's] counsel had been with him since the beginning of trial. Further, there was no showing that [Petitioner] would suffer any prejudice from being represented, which become a consideration when the request to represent himself is untimely as it was here. [ECF No. 15-6]

Here, the record demonstrates that the timing of Petitioner's request (after guilty phase and

before sentencing phase) vested the trial court with discretion in ruling on Petitioner's request to

proceed *pro se*. The record also demonstrates that Petitioner lacked technical legal training and

had limited prior personal experience with criminal trials, and that the trial court was properly

concerned about the impact of these deficiencies on the sentencing proceeding. [<u>Id.</u>] Furthermore,

throughout the sentencing hearing, the court provided Petitioner with numerous opportunities to

address his concerns directly with the court, thus mitigating any potential prejudice. [<u>Id.</u>]

Consequently, the Missouri Court of Appeals' decision finding Petitioner was not entitled

to relief because he failed to establish that he suffered any prejudice as a result of the trial court's

denial, was not an unreasonable application of clearly established federal law as determined by the

21

United States Supreme Court. Furthermore, Petitioner has not shown that the Missouri Court of Appeals' determination was based on an unreasonable determination of the facts based on the record.

### 4. Grounds Three and Four: Ineffective assistance of counsel

Petitioner asserts in Grounds Three and Four that he received ineffective assistance of trial counsel and of appellate counsel, respectively. [ECF No. 1]. Respondent argues the Missouri Court of Appeals addressed these claims on the merits and that this court should defer to the state court's decision and deny these grounds for relief. [ECF No. 15]

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show that: (1) "counsel's representation fell below an objective standard of reasonableness[;]" and (2) "the deficient performance prejudiced the defense[.]" Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The first prong requires a showing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. Defense counsel's conduct is presumed to fall within the wide range of professionally reasonable assistance. Id. at 689. "[S]tragic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonably precisely to the extent that reasonable professional judgments support the limitations on investigation." Id. at 690-91.

To prove prejudice, a petitioner must show a reasonable probability exists "that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. A court need not address both prongs of the Strickland test if it finds the habeas petitioner has not established one of the prongs. Id. at 697.

"Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult." Harrington v. Richter, 562 U.S. 86, 105 (2011). "The standard created by Strickland and §2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Id. (internal citations omitted). It is not sufficient for a petitioner to "show that he would have satisfied Strickland's test if his claims were being analyzed in the first instance[.]" Bell v. Cone, 535 U.S. 685, 698-99 (2002) "Rather, he must show that the [state court] applied Strickland to the facts of his case in an objectively unreasonable manner." Id. at 699.

### a. Ground Three: Ineffective assistance for advising Petitioner not to testify at trial

In Ground Three, Petitioner contends that his trial counsel provided ineffective assistance by advising Petitioner not to testify in his own defense at trial. [ECF Nos. 1, 26] Petitioner asserts the decision of the Missouri Court of Appeals affirming the motion's court's denial of his claim was contrary to, or involved an unreasonable application of, clearly established federal constitutional law. [Id.] Petitioner also argues that the decision was based upon an unreasonable determination of the facts, in that the state courts' findings were rebutted by clear and convincing evidence. [Id.] Specifically, Petitioner contends that the fact that his first trial, in which he did testify, ended in either a hung jury or an acquittal on the charges but his second trial, in which he did not testify, resulted in his conviction on some of the charges demonstrates that he was prejudiced by trial counsel's advice not to testify. [Id.]  Petitioner asserts that his testimony would have convinced the jury to acquit him of the charges with respect to J.T. [Id.]

At the evidentiary hearing on the post-conviction motion, counsel testified that she advised Petitioner not to testify at his retrial after her review of Petitioner's prior trial testimony and her

consultation with the Petitioner's first trial attorney. [ECF No. 27-2] Counsel testified she believed Petitioner's prior trial testimony was neither effective nor helpful to his defense. Moreover, counsel concluded that Petitioner's testimony was not essential to fulfill their trial strategy. [Id.] In denying Petitioner's claim, the motion court found the credible testimony at the evidentiary hearing demonstrated that counsel's advice to Petitioner was carefully considered and was based on reasonable trial strategy. [ECF No. 15-7]

On appeal, the Missouri Court of Appeals deferred to the motion court's credibility determinations and agreed with the motion court that counsel's advice to Petitioner was based on reasonable trial strategy. [ECF No. 15-10] Furthermore, the Court of Appeals found that Petitioner failed to prove he was prejudiced by counsel's alleged deficient representation. [Id.] In assessing the second prong of the Strickland standard, the Missouri Court of Appeals explained:

> [Petitioner] would have testified that the sex with J.T. was consensual, that he offered J.T. money for sex, and that the problems only started when a witness interrupted them. Trial Counsel did not believe [Petitioner's] testimony was necessary to fulfill their defense strategy, as she thought the fact that J.T. was a prostitute and that it was consensual would come out through the testimony of other witnesses. In fact, J.T.'s testimony revealed she was a prostitute and was hired to perform oral sex on [Petitioner]. Even in light of that information, the jury found [Petitioner] guilty of offenses relating to J.T. [Petitioner] has failed to prove by a preponderance of the evidence that the jury would have found his testimony more credible than testimony from J.T., the witness who approached the vehicle, the medical examiner, and police officers working the case. See Rule 29.15 (i). Accordingly, [Petitioner] has failed to show a reasonable probability that, but for Trial Counsel's alleged error, the outcome of the proceeding would have been different. [Id.]

The Court concludes that the Missouri Court of Appeals properly applied Strickland and determined that Petitioner failed to satisfy his burden of demonstrating that counsel's performance fell outside the range of reasonable professional assistance or that he was prejudiced by counsel's alleged deficient representation. The Missouri Court of Appeals' conclusion that trial counsel was not ineffective was neither contrary to, nor an unreasonable application of, Strickland, and was not

based upon an unreasonable determination of the facts based on the record. Accordingly, Petitioner's Ground Three is denied.

### b. Ground Four – Ineffective assistance of appellate counsel

In Ground Four, Petitioner claims that appellate counsel was ineffective for failing to raise on direct appeal a claim that the trial court erred in overruling his motion to sever offenses or, in the alternative, motion to dismiss for improper joinder. [ECF No. 1, 26] Specifically, Petitioner contends that joinder of the offenses was improper because the incidents were not connected, were not part of a common scheme or plan, and were not of the same or similar character. [Id.] Petitioner also contends the trial court's failure to sever the charges rendered his trial fundamentally unfair. [Id.] Petitioner maintains he was prejudiced by having to defend against charges involving four different victims and he would have been acquitted if at trial he had only faced the charges related to J.T. [Id.] Petitioner asserts the decisions of the state courts concluding he did not receive ineffective assistance of appellate counsel were either contrary to, or involved an unreasonable application of, clearly established federal constitutional law, and that the decisions were based upon an unreasonable determination of the facts. [Id.]

The Sixth Amendment guarantees the right to effective assistance of counsel on direct appeal. See Evitts v. Lucey, 469 U.S. 387, 396-97 (1985); Douglas v. California, 372 U.S. 353, 357-58 (1963). The proper standard for evaluating a claim of ineffective assistance of appellate counsel is set forth in Strickland. Smith v. Robbins, 528 U.S. 259, 285 (2000).  Petitioner must therefore show that his appellate attorney's performance was below the reasonable standard of competence and that performance was prejudicial. See Strickland, 466 U.S. at 687-88; Gee v. Groose, 110 F.3d 1346, 1352 (8th Cir. 1997).

"When appellate counsel competently asserts some claims on a defendant's behalf, it is difficult to sustain a[n] ineffective assistance claim based on allegations that counsel was deficient

for failing to assert some other claims." Link v. Luebbers, 469 F.3d 1197, 1205 (8th Cir. 2006). "This is because one of appellate counsel's functions is to winnow the available arguments and exercise judgment about which are most likely to succeed on appeal." Gray v. Norman, 739 F.3d 1113, 1118 (8th Cir. 2014). To maximize the likelihood of success, appellate counsel need not, and should not, raise every non-frivolous claim. Robbins, 528 U.S. at 288. "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Id. (quotation omitted). To establish that appellate counsel's performance was prejudicial, a petitioner "must show a reasonable probability that, but for his counsel's unreasonable [conduct], he would have prevailed on his appeal." Id. at 285.

"Improper joinder does not, in itself, violate the Constitution. Rather, misjoinder [rises] to the level of constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." United States v. Lane, 474 U.S. 438, 446 n. 8 (1986). Misjoinder requires reversal only if it resulted in actual prejudice, in that it "had substantial and injurious effect or influence on determining the jury's verdict." Id. at 449 (quoting Kotteakos v. United States, 328 U.S. 750, 766 (1946)). Factors which may lead to a finding of prejudice include, (1) the court's failure to give limiting instructions; (2) evidence of guilt that is not overwhelming; (3) the admission of evidence that would have been inadmissible without the improperly joined defendants or charges; (4) the evidence on the improperly joined charges was not distinct or easily segregated; and (5) the en masse trial of numerous defendants. United States v. Mann, 701 F.3d 274, 290 (8th Cir. 2012). Similarly, to obtain habeas relief for a failure to sever, the petitioner must demonstrate that "the failure to grant severance rendered the trial 'fundamentally unfair.'" Wharton-El v. Nix, 38 F.3d 372, 374 (8th Cir. 1994) (quoting Hollins v. Department of Corrections, 969 F.2d 606, 608 (8th Cir. 1992)).

26

In his Rule 29.15 post-conviction motion and subsequent appeal, Petitioner claimed appellate counsel was ineffective for failing to appeal the trial court's denial of his motion to sever the offense or, in the alternative, motion to dismiss for improper joinder. [ECF No. 15-8]. The motion court determined that Petitioner's appellate counsel was not ineffective for failing to raise the claim on appeal because joinder was proper due to the similar character of the charged crimes, and severance was not required because the evidence related to each offense was distinct and uncomplicated. [ECF No. 15-7]

In affirming the denial of Petitioner's claim of ineffective assistance of appellate counsel, the Missouri Court of Appeals explained:

> A criminal defendant does not have a state or federal constitutional right to be tried [on] only one crime at a time. *State v. Smith*, 886 S.W.2d 194, 197 (Mo. App. E.D. 1994). Liberal joinder of offenses is favored in the interests of judicial economy. *State v. Reeder*, 182 S.W.3d 569, 576 (Mo. App. E.D. 2005). Joinder is proper if the offenses are, *inter alia*, of the same or similar character. Rule 23.05; section 545.140.2 RSMo 2000. The tactics used in separate offenses do not have to be identical to be considered of the same or similar character for joinder purposes. *State v. McMillon*, 436 S.W.3d 663, 670 (Mo. App. E.D. 2014). Several nonexclusive factors we may consider to determine if a defendant's tactics are similar in character include, (1) the commission of the same type of offenses; (2) victims of the same sex or age group; (3) offenses occurring in a common geographic region; and (4) offenses closely related chronologically. *Id.*; *Reeder*, 182 S.W.3d at 576-77.
>
> As an initial note, we recognize that [Petitioner] remains convicted on only three of the ten charges on which he was indicted. However, as the Motion to Sever was filed when [Petitioner] was facing ten charges, we will analyze joinder as to all charges. *See Reeder*, 182 S.W.3d at 573, 576-77 (this Court analyzed two events related to all counts in the indictment, even though less charges were actually submitted to the jury and the jury acquitted on one charge).
>
> We agree with the motion court that "it is clear the crimes here were of the same or similar character so as to justify joinder." [Petitioner] was charged with rape and sodomy against all four women. Additionally, the victim and alleged victims testified to a similar narrative of events, including getting in [Petitioner's] gold vehicle and [Petitioner] driving to a secluded location. Each occurrence included oral sex and sexual intercourse. Each woman testified to

27

being in the same position, laying on her stomach in a reclined seat, facing the rear windshield. Further, each female victim or alleged victim was alone before entering [Petitioner's] car. The incidents happened during a five[-]month period and, undisputedly, were within close proximity to each other. Based on these similarities, the motion court did not clearly err in finding the charges properly joined.

Having determined the joinder of the offenses was proper, the Missouri Court of Appeals then assessed whether the trial court abused its discretion in denying the motion to sever the charges into four separate trials. The court explained:

We will only reverse a trial court's denial of a motion to sever charges if the trial court abused its discretion in denying the motion and there is a clear showing of prejudice. *McMillon*, 436 S.W.3d at 670. A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *Id*. In assessing prejudice, a court should consider the number of offenses charged, the complexity of the evidence to be offered, and the ability of the jury to distinguish the evidence and apply the law intelligently to each offense. *State v. Love*, 293 S.W. 3d 471, 477 (Mo. App. E.D. 2009). Additionally, severance of offenses shall be ordered only after the defendant "'makes a particularized showing of substantial prejudice if the offense is not tried separately' and after the 'court finds the existence of a bias or discrimination against the party that requires a separate trial of the offense.'" *State v. McKinney*, 314 S.W. 3d 339, 342 (Mo. Banc 2010) (quoting Rule 24.07(b) and (c)).

The Court of Appeals found Petitioner's contentions that the prosecutor could have used the evidence as to all counts to "bolster" the evidence presented on each specific charge, and that evidence of his guilt as to one alleged victim could be used against him on the other counts, failed to make a particularized showing of substantial prejudice resulting from the trial court's refusal to sever the charges. Instead, the Court of Appeals determined that the evidence presented at trial regarding each offense was distinct and uncomplicated; the jury was instructed that it must consider each offense separately; and the jury's acquittal of Petitioner on five of the ten counts demonstrated the jury's ability to distinguish the evidence and apply the law to each specific charge. The Court of Appeals held that Petitioner failed to demonstrate that his appellate counsel

28

was ineffective for failing to appeal the trial court's refusal to sever the charges against him because he had not demonstrated that the claim would have been successful on appeal and, thus, Petitioner could not establish prejudice from counsel's alleged error.

Here, Petitioner does not support his contention that the Missouri Court of Appeals' decision was contrary to, or involved an unreasonable application of, clearly established federal constitutional law, or that the decision was based on an unreasonable determination of the facts. Instead, Petitioner simply presents the conclusory assertion that he was substantially prejudiced by the joinder of the offenses for trial and that "he would have been acquitted of the charges relating to [J.T.]" if he "would have only faced J.T. at a trial[.]" Upon review of the record, the Court concludes that the Missouri Court of Appeals' determination that appellate counsel did not provide ineffective assistance by failing to pursue a challenge to the trial court's denial of Petitioner's motion to sever or, in the alternative, motion to dismiss for improper joinder, was not contrary to or an unreasonable application of clearly established federal law. Nor was the Court of Appeals' decision based on an unreasonable determination of the facts in the light of the record. The Court denies Petitioner's Ground Four.

### B.  Procedurally-defaulted claim

#### 1.  Ground Five – Ineffective assistance of trial counsel – double jeopardy issue

In Ground Five, Petitioner argues his trial counsel provided ineffective assistance by failing to seek dismissal before trial of the reindicted charges involving S.S., M.W., and H.S. in Cause No. 1022-CR01505 on double jeopardy grounds because the new indictment came after the State entered a nolle prosequi on those same charges in Cause No. 0722-CR09916 and after double jeopardy had attached. Respondent asserts Petitioner's fifth claim is procedurally barred or, in the alternative, without merit.

29

Before seeking federal habeas relief under § 2254, a petitioner must exhaust his state-court remedies. 28 U.S.C. § 2254 (b)(1)(A). To avoid procedural default, the petitioner must "fairly present" the claim to the state court before seeking federal habeas relief. Morris v. Norris, 83 F.3d 268, 270 (8th Cir. 1996); Deck v. Jennings, 978 F.3d 578, 581 (8th Cir. 2020). "A claim has been "fairly presented when a petitioner has properly raised the 'same factual grounds and legal theories' in the state courts which he is attempting to raise in his federal habeas petition." Wemark v. Iowa, 322 F.3d 1018, 1021 (8th Cir. 2003) (internal citations omitted) (quoting Joubert v. Hopkins, 75 F.3d 1232, 1240 (8th Cir. 1996)). "If a petitioner has not presented his habeas corpus claim to the state court, the claim is generally defaulted." Barrett v. Acevedo, 169 F.3d 1155, 1161 (8th Cir. 1999) (en banc).

A petitioner must present the claim to the state courts "in accordance with state procedural rules." Arnold v. Dormire, 675 F.3d 1082, 1086-87 (8th Cir. 2012) (internal quotation marks omitted) (quoting Beaulieu v. Minnesota, 583 F.3d 570, 573 (8th Cir. 2009)). To satisfy the exhaustion requirement, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." Grass v. Reitz, 643 F.3d 579, 584 (8th Cir. 2011) (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999)).

Under Missouri law, a post-conviction proceeding is the exclusive procedure for pursuing an ineffective-assistance-of-counsel claim. Moore-El v. Luebbers, 446 F.3d 890, 896 (8th Cir. 2006); Mo. S. Ct. Rule 29.15(a). Any claim that should have been but was not presented in a post-conviction motion or in an appeal from a denial of a post-conviction motion is procedurally defaulted. Interiano v. Dormire, 471 F.3d 854, 856 (8th Cir. 2006). This Court may not consider the merits of a procedurally defaulted claim unless the petitioner shows either (1) cause and

prejudice or (2) that a miscarriage of justice will occur if the Court fails to consider the grounds because the petitioner is actually innocent of the charge of which he was convicted. <u>Sawyer v. Whitley</u>, 505 U.S. 333, 338-39 (1992); <u>Thomas v. Payne</u>, 960 F.3d 465, 471 (8th Cir. 2020).

Petitioner did not present to a Missouri court his ineffective assistance of trial counsel claim now presented in his habeas petition as Ground Five. Petitioner acknowledges his failure to raise this issue in the state court but asserts that he is entitled to develop and present this ground for relief in his habeas petition under <u>Martinez v. Ryan</u>, 566 U.S. 1 (2012), because his post-conviction counsel was ineffective by failing to present the claim of ineffective assistance of trial counsel in his amended post-conviction motion.

Because there is no federal constitutional right to counsel in state post-conviction proceedings, claims of ineffective assistance of post-conviction counsel are not cognizable as independent claims in federal habeas corpus proceedings. <u>see</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 752 (1991); <u>Hunton v. Sinclair</u>, 732 F.3d 1124, 1126 (9th Cir. 2013); <u>Jennings v. Groose</u>, No. 4:94CV1349 CDP, 2015 WL 1475663, at *3 (E.D. Mo. Mar. 31, 2015).  The Supreme Court has recognized a narrow exception to the procedural default rule, when a petitioner "can establish 'cause' to excuse the procedural default and demonstrate that he suffered actual prejudice from the alleged error." <u>Davila v. Davis</u>, ---  U.S. ---, 137 S. Ct. 2058, 2062 (2017). Under <u>Martinez</u>, ineffective assistance of post-conviction counsel may constitute cause for a petitioner's failure to properly raise a claim of ineffective trial counsel in state court when the state's collateral review proceeding was the initial review proceeding for an ineffective assistance of counsel claim. <u>Martinez</u>, 566 U.S. at 14.

Under this exception, the petitioner can overcome the procedural default of a claim if "(1) post-conviction counsel performed deficiently; (2) 'there was a reasonable probability that, absent

31

the deficient performance, the result of the post-conviction proceedings would have been different'; and (3) the 'underlying ineffective-assistance-of-trial-counsel claim is a substantial one.'" Dickinson v. Shinn, 2 F.4th 851, 858 (9th Cir. 2021) (quoting Ramirez v. Ryan, 937 F.3d 1230, 1242 (9th Cir. 2019) (internal citations omitted), cert. granted sub nom. Shinn v. Ramirez, No. 20-1009, ––– U.S. ––––, 141 S. Ct. 2620, 2021 WL 1951793 (U.S. May 17, 2021). To meet this narrow exception for establishing cause, the petitioner must demonstrate that post-conviction counsel was ineffective under the standards of Strickland. Martinez, 566 U.S. at 14; Deck, 978 F.3d at 582-84. In assessing post-conviction counsel's performance, the Court must determine whether the underlying ineffective assistance of trial counsel claim was "substantial" enough that post-conviction's counsel's failure to raise the issue constituted ineffectiveness. Martinez, 566 U.S. at 14; Deck, 978 F.3d at 582.  A claim is "substantial" when it has "some merit." Martinez, 566 U.S. at 14.

Although Petitioner was acquitted on the counts involving M.W. and H.S., and his convictions on the counts related to S.S. were vacated by the post-conviction court as violative of Petitioner's right to be free from double jeopardy pursuant to Mo. Rev. Stat. §56.087, Petitioner now contends that his trial counsel was ineffective for failing to seek the dismissal of all the refiled charges pursuant to Mo. Rev. Stat. §56.087 prior to his second trial. Petitioner asserts he was prejudiced by being forced to defend himself against multiple charges involving multiple victims when he only should have faced the charges involving J.T., and because the jury's finding of guilt as to the charges involving J.T. may have been influenced by the evidence related to the other alleged victims.

Respondent argues the record demonstrates that post-conviction counsel performed effectively, securing the reversal of two of Petitioner's convictions. Respondent contends

32

Petitioner has failed to demonstrate that his post-conviction counsel was ineffective for choosing not to challenge the charges involving M.W. and H.S.[9] Respondent further contends Petitioner's claim is largely repetitive of his claims regarding joinder of the offenses and Petitioner has failed to demonstrate that he was prejudiced by trial counsel's failure to seek dismissal of the charges related to S.S., M.W., and H.S.

In this case, there is no dispute that the State's actions of entering a nolle prosequi on the hung counts relating to S.S., M.W., and H.S. after Petitioner's first trial and its subsequent refiling of the charges, violated section 56.087 RSMo and entitled Petitioner to dismissal of those charges. During the state post-conviction proceedings, post-conviction counsel raised this issue with respect to the Petitioner's convictions regarding S.S., the State conceded the point, and the motion court agreed, vacating Petitioner's convictions on Counts I and II. Arguably, trial counsel's failure to seek dismissal of all seven counts on this basis prior to Petitioner's second trial constitutes deficient representation. See Hinton v. Alabama, 571 U.S. 263, 274 (2014) (holding, with respect to defense counsel's mistaken belief about the law related to obtaining a crucial expert witness, that "[a]n attorney's ignorance on a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under Strickland.")

To establish cause and prejudice to excuse a procedural default, however, Petitioner must demonstrate not only that the underlying ineffective assistance of trial counsel claim is substantial,

---

[9] Respondent presents several alternative arguments in response to Petitioner's claim. This includes arguments contesting Petitioner's ability to challenge, both in the state courts and in the current federal habeas proceeding, any alleged constitutional violations resulting from his retrial on the charges related to S.S., M.W., and H.S. because Petitioner was either acquitted on those charges or his convictions were subsequently vacated. Because the Court views Petitioner's claim that trial counsel's failure to challenge his retrial on the charges involving S.S., M.W., and H.S. violated his due process rights with regard to his trial on the charges involving J.T., as opposed to a direct challenge to those charges on which he has no current conviction and is serving no sentence, this Court declines to address Respondent's arguments to that extent.

but also that post-conviction counsel was ineffective for failing to raise the claim in the post-conviction proceeding. This includes demonstrating that post-conviction counsel performed deficiently and that Petitioner was prejudiced by the deficient representation, in that the result of the post-conviction proceeding would have been different absent post-conviction counsel's deficient performance. See <u>Dickinson</u>, 2 F.4th at 858.

Post-conviction counsel discovered trial counsel's error and effectively raised the double jeopardy issue with respect to those charges on which Petitioner was convicted, successfully overturning two of Petitioner's convictions. Post-conviction counsel also raised a claim that appellate counsel was ineffective for failing to challenge the trial court's denial of Petitioner's motion to sever the offenses or, in the alternative, motion to dismiss for improper joinder. This claim directly addressed Petitioner's argument that he was prejudiced by defending against the charges simultaneously and that the collective evidence regarding all the charges unduly prejudiced his defense on the individual charges. The fact that post-conviction counsel did not raise an additional, more tenuous, claim is not deficient performance. As already noted, "[d]eclining to raise a claim ... is not deficient performance unless that claim was plainly stronger than those actually presented." <u>Deck</u>, 978 F.3d at 584 (quotations omitted) (finding post-conviction counsel's reasonable selection of claims to raise is not deficient performance).

In addition, both the post-conviction court and the appellate court on review found Petitioner failed to demonstrate substantial prejudice as a result of conducting the trials together. The appellate court specifically rejected Petitioner's claim that the evidence presented as to all counts could have been used to bolster the evidence presented on each specific charge or that evidence of Petitioner's guilt as to one alleged victim could be used against him on the other charges. In reaching this conclusion, the Missouri Court of Appeals found that the evidence of

each offense was distinct and uncomplicated, the jury was instructed that it must consider each count separately, and that the jury's acquittal on five of the charges demonstrated the jury's ability to distinguish the evidence and apply the law to each count. This Court concluded above that the state appellate court's decision was neither contrary to, nor an unreasonable application of, clearly established federal law, and was not an unreasonable determination of the facts in light of the evidence.

Moreover, the Court finds that the evidence of guilt was overwhelming as to the charges involving J.T. The evidence presented at trial was that the assault on J.T. was particularly brutal, causing her significant emotional and physical trauma as testified to by other witnesses, lending credibility to J.T.'s testimony that the acts were not consensual. In light of the overwhelming evidence of guilt, in conjunction with the state courts' findings, Petitioner has failed to establish that he was prejudiced by post-conviction counsel's failure to raise this claim as to trial counsel's performance in the amended post-conviction motion.

Based on the foregoing, the Court finds Petitioner has failed to demonstrate that his post-conviction counsel's representation was either deficient or that he was prejudiced by counsel's alleged deficient representation. Because Petitioner has failed to establish that his post-conviction counsel was ineffective, Petitioner's Ground Five is procedurally barred.

## IV.  Evidentiary Hearing

Petitioner also requests an evidentiary hearing on his Grounds Four and Five to establish (1) appellate counsel's reasons for failing to raise the joinder and severance issues on appeal and (2) cause under Martinez. The relevant statute, 28 U.S.C. § 2254(e)(2), bars an evidentiary hearing unless a habeas petitioner was unable to develop the factual basis of his claim in state court despite diligent effort or establishes statutory exceptions to that requirement.  See Williams v. Taylor, 529

U.S. 420, 432 (2000) (a petitioner must show diligent effort for not developing his claim in state court).  The statutory exceptions do not apply here.

As to his fourth ground, Petitioner does not address the diligence requirement and simply observes that the post-conviction court did not hold an evidentiary hearing on his ineffective-assistance-of-appellate-counsel claim. On his fifth ground, which was not previously raised in a state court proceeding, Petitioner asserts he will call trial counsel to testify regarding (1) counsel's failure to seek dismissal of the barred charges and (2) the prejudice to Petitioner by proceeding to trial against the four alleged victims simultaneously. While such an inquiry might arguable assist the underlying ineffective-assistance-of-trial-counsel claim, Petitioner has failed to identify in what manner an evidentiary hearing would assist in the Court's assessment of the ineffective-assistance-of-post-conviction-counsel claim. Therefore, Petitioner has not demonstrated entitlement to an evidentiary hearing under Section 2254(e)(2).

Even assuming the Court may consider the granting of an evidentiary hearing in this case, the Court must take into consideration the AEDPA's deferential standards that "control whether to grant habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007). More specifically, "a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Id. at 474. A habeas court need not hold an evidentiary hearing "if the record refutes the factual allegations[,] otherwise precludes habeas relief," or allows resolution of the issues by reference to the state court record. Id.

The AEDPA requires the Court to limit its review of the merits of Petitioner's ground for relief to the record that was before the state court adjudicating the claim on its merits. See Cullen, 563 U.S. at 181-82. In addressing the merits of Petitioner's ineffective-assistance-of-appellate-

counsel claim in Petitioner's post-conviction appeal, the Missouri Court of Appeals had before it the trial transcript and the record on appeal for Petitioner's direct appeal, as well as the post-conviction evidentiary hearing transcript and legal file for Petitioner's post-conviction appeal. That state court record is available to this Court as part of the record in this proceeding.  Because the state court record allows resolution of the merits of Petitioner's Grounds Four and Five, the Court denies Petitioner's request for an evidentiary hearing.

### V.   Certificate of Appealability

A final order in a habeas proceeding in which the detention complained of arises out of process issued by a state court cannot be appealed unless the judge issues a certificate of appealability ("COA").  28 U.S.C. § 2253(c); Fed. R. App. P. 22(b)(1).  A judge may issue a COA under Section 2253(c) only if a petitioner has made "a substantial showing of the denial of a constitutional right."  Tennard v. Dretke, 542 U.S. 274, 282 (2004); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  This standard requires a petitioner to demonstrate, with respect to claims resolved on the merits, that "reasonable jurists would find the ... court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000); accord Miller-El, 537 U.S. at 338 (quoting Slack, 529 U.S. at 484).

The Court concludes that Petitioner has not made a substantial showing of the denial of any constitutional right. Accordingly, the Court will not issue a certificate of appealability with respect to any aspect of the denial of Petitioner's petition.

### VI.   Conclusion

After careful consideration,

**IT IS HEREBY ORDERED** that Petitioner's request for relief pursuant to 28 U.S.C. § 2254 [ECF No. 1] is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's request for an evidentiary hearing is **DENIED**.

**IT IS FINALLY ORDERED** that any motion by Petitioner for a certificate of appealability will be **DENIED.**

A separate judgment in accordance with this Memorandum and Order is entered this same date.


_____

PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE


Dated this 15th day of October, 2021